ADA C. SHANNON ET AL. *v.* J. C. BLUM & Co.

STATUTE OF FRAUDS. *Trader. Property in hand liable for debts. Sect 1300, Code 1880.*

Where horses are placed in the custody of a horse-trader, to be sold by him as a part of his stock, or in such circumstances as to appear to be his, and thus furnish him a basis of credit, they become liable for his debts, under sect. 1300 of the Code of 1880, which provides that, " if any person shall transact busi ness in his own name, all the property, stock, money, and choses in action used or acquired in such business, shall, as to the creditors of any such person, be liable for his debts and be in all respects treated in favor of his creditors as his property."

*Semble*, that where property is placed in the hands of a factor or auctioneer to be sold, in the usual course of his business, for the benefit of the owner, the statute quoted would not apply.

APPEAL from the Circuit Court of Warren County.

Hon. WARREN COWAN, Judge.

Shannon & Peck being licensed traders in the city of Vicksburg, dealing in horses and mules, had some mules and four mares, which they were offering for sale from day to day at their place of business. These animals were seized under an attachment sued out by J. C. Blum & Co. against Shannon & Peck. Ada C. Shannon filed an affidavit in the attachment proceedings, claiming the four mares. Issue was joined to try the right of property, and a trial was had, which resulted in a verdict for the plaintiffs in attachment.

For the plaintiffs the court instructed the jury as follows: "If the jury believe from the evidence that Shannon & Peck, or either of them, in the month of February, 1882, in the city of Vicksburg, were engaged in the business of selling mules and horses at a place of business in said city, and that the four mares in controversy in this case were acquired, or used and kept, and offered by them, or either of them, for sale in the course of said business so carried on by them, or either of them, the jury should find in favor of plaintiffs."

The effect of the proof is sufficiently indicated in the opinion of the court. From a judgment in favor of the plaintiffs in attachment the claimant and the surety on the claimant's bond appealed.

*R. V. Booth,* and *A. W. Brien,* for the appellants.

Sect. 1300 of the Code of 1880 was intended to cure an evil which had become almost universal prior to its enactment, and had reference to that class of men who had a regular place of business, but who were conducting, or carrying it on, under the guise of " agent," " factor," etc. But, surely, it was never intended that, as in this case, a man who had simply been authorized to sell a piece of property for another, should label the name of his principal on his hat to protect the prop-

erty from his debts.    And yet, if the construction contended for by adverse counsel be correct, my cotton in the hands of a commission merchant for sale, would be liable for his debts, because he was using it in carrying on his business.    This court has recently construed this statute in two cases ( *Gumbel* v. *Koon*, and *Quinn* v. *Myles*, 59 Miss.), which strikingly illustrate the meaning of the words " use " and " acquire," as they appear in the statute referred to.    We submit that the four mares in controversy were not used or acquired by Shannon & Peck so as to bring them within the condemnation of this statute.

*L. W. Magruder*, on the same side.

The proposition of appellant is, that the terms of sect. 1300 of Code of 1880 does not include property entrusted to another engaged in business, for the sole purpose of selling the same ; that such an agency, limited to specific property and terminating by its sale, was not contemplated by the law.    It is not property used in the " business," as meant by the statute.    It would be a strained construction to say that particular property entrusted to a merchant for sale is used by him in the business.    Business is a venture, comprehending a whole scheme of traffic with money, or other means, and nothing, accurately and strictly speaking, can be said to be used in the business unless it constitute a part of the means as a basis for the conduct of the concern and is a part of the working capital.

*L. W. Magruder*, also made an oral argument.

*Miller & Hirsh*, for the appellees.

The manifest purpose of this new section in the Statute of Frauds (1300 of the Code of 1880), as said by this court, was to make the apparent ownership of property go with the real ownership and to prevent the interposition of secret claims to property by persons who have permitted others to deal with it as their own or to hold themselves out to the world as the true owners.    It is against the settled policy of construction in this State to engraft exceptions upon a statute, even to prevent a supposed hardship.    We think there is no difference

in principle between the case at bar and that of *Gumbel* v. *Koon*, 59 Miss. 264, for it can make no difference whether a business is to be conducted for a long or short period. If a person receives a particular consignment merely for the purpose of selling it for another, obtains a license and proceeds to carry on the business of selling it in his own name and so appearing to be the owner, the statute in terms applies just as clearly as if he has a commission to buy a given sort of property and conducts the business of buying in his own name. If the property is taken for the agent's debts the loss must fall upon the principal, who has put an irresponsible agent in a position to deceive his creditors.

CHALMERS, J., delivered the opinion of the court.

Counsel for appellant argue that sect. 1300 of the Code of 1880, which makes liable to the debts of a trader all property " used or acquired in his business," was not intended to apply to property in the hands of a factor or auctioneer, nor to a clear case of bailment where the property is temporarily hired or loaned to a trader, or put in his hands as an agent to be sold for the exclusive benefit of the owner and the proceeds at once handed over to him. Whether this doctrine be compatible with the statute or not (and we incline to think that it is, at least in so far as it is applied to property in the hands of a factor or auctioneer), it will not suffice to produce a reversal of this case.

There was evidence that would warrant the belief that the property here involved was intentionally so placed by the owner in the custody of the traders as to become either a part of their stock, or by appearing to be so, to furnish them with a basis of credit. The case was submitted to the jury under instructions which were unobjectionable, and we must construe the verdict of the jury as a finding of the question of fact as to whether such was the nature of their custody in the affirmative.

Affirmed.