### PATTERSON-SARGENT CO., Inc., v. RUMBLE et al.

### In re W. P. WILKIN CO., Inc.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1922.)

### No. 1916.

Bankruptcy ⬀140(3)—Merchandise held by bankrupt as agent held not reclaimable under Virginia statute.

Merchandise shipped by petitioner to bankrupt to be stored and delivered to petitioner's customers on orders, with the right to bankrupt to purchase such as desired, which was placed by bankrupt in its warehouses with other goods for sale, and from which it made sales, as to that remaining which came into possession of its trustees, *held* not reclaimable by petitioner under Code Va. 1919, § 5224, providing that, if any person transact business in his own name, without a required designation of agency, all property or stock acquired or used in such business shall as to his creditors be liable for his debts.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk, in Bankruptcy; Edmund Waddill, Jr., Judge.

---

In the matter of the W. P. Wilkin Company, Inc., bankrupt. From an order denying the petition of the Patterson-Sargent Company, Inc., against H. H. Rumble and others, trustees, to reclaim property, it appeals. Affirmed.

Certiorari denied 257 U. S. ——, 42 Sup. Ct. 590, 66 L. Ed. ——.

John S. Wise, Jr., of New York City (Hugh C. & Hugh W. Davis, of Norfolk, Va., on the brief), for appellant.

J. Winston Read, of Newport News, Va. (Harry K. Wolcott, of Norfolk, Va., on the brief), for appellees.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

KNAPP, Circuit Judge. The W. P. Wilkin Company, Inc., filed a petition in bankruptcy, and on January 25, 1921, Flory and Rumble were appointed receivers. On February 10 they were also, together with one McMurran, appointed trustees. This appeal is brought by the Patterson-Sargent Company, Inc., petitioner below, from an order dismissing its petition, filed on February 24, by which it sought to reclaim certain property which the receivers had taken into possession. The right to retain is asserted under section 5224 of the Code of Virginia, which reads as follows:

"If any person transact business as a trader, with the addition of the words 'factor,' 'agent,' 'and company,' or 'and Co.,' and fail to disclose the name of his principal or partner by a sign in letters easy to be read, placed conspicuously at the house wherein such business is transacted, and also by a notice published for two weeks in a newspaper (if any) printed in the city, town or county wherein the same is transacted; or if any person transact such business in his own name, without any such addition; all the property, stock, and choses in action acquired or used in such business shall, as to the creditors, of any such person, be liable for the debts of such person. This section shall not apply to a person transacting such business under a license to him as an auctioneer or commission merchant."

The Wilkin Company carried on a ship chandlery business under a general merchandise license. It had no license as an auctioneer or commission merchant, and had made no publication in the newspapers of its agency, or of any other interest in the business than its own. The Patterson-Sargent Company, Inc., having offices in Cleveland, Ohio, and New York City, made a contract with the Wilkin Company, dated June 1, 1919, by which the latter agreed "to accept and store upon arrival all material consigned by the Patterson-Sargent Company," and to deliver on behalf of that company, for a service charge, material from this stock to named parties at Norfolk, Newport News, and Hampton Roads, Va., sending daily memoranda of such deliveries to the New York office for billing to the purchasers. It was also permitted to "purchase from stock stored * * * so much thereof as it may from time to time require, * * * such sales being subject to proper settlement the 10th of the month following." This contract reserved title to the property in the consignor, subject to the right of the Wilkin Company to "purchase from stock stored," and provided for its termination by either party on written notice of 60 days. The contract was canceled by the Patterson-Sargent Company on or about

January 15, but without the required notice; such action having been taken, as stated by Mr. Wilkin, president of the Wilkin Company, "owing to the condition of our company," and he admitted having advised the petitioner of its financial embarrassment 2 or 3 days before.

About the same time, Wilkin attempted to sublet to one Westheimer, a clerk in his employ, a warehouse fronting on the Roanoke dock side of Campbell's wharf, Norfolk, then under lease to the Wilkin Company, as was also the adjoining warehouse facing on the Commercial Place side of Campbell's wharf, and on the 19th of January he transferred the larger part of the goods now claimed by the petitioner from the Commercial Place warehouse to the one on the Roanoke dock side of the wharf. A small portion of the goods claimed was brought from Newport News. Upon learning of this removal, the receivers, on January 29, finding Mr. Wilkin on the premises, advised him that they considered it their duty to take possession of the property, which they accordingly did; Wilkin consenting thereto and remaining in charge for them.

Inasmuch as the lease of these premises to the Wilkin Company prohibited assignment or subletting without the consent of the owner, which was refused, the trustees assert that the lease to Westheimer was wholly invalid. But in the view we take of the case the question of the validity of that lease is quite immaterial. Even if it be conceded that Wilkin for a short time had possession for the petitioner as its agent of the property in dispute, he voluntarily relinquished it to the receivers at their request, and they have ever since been in peaceable possession thereof. Indeed, the fact that petitioner seeks to reclaim the property in this proceeding implies acknowledgment that it is held in peaceable possession by the trustees.

As we see the matter, the sole question here is whether the property claimd by petitioner was "acquired or used" in the business of the bankrupt, within the meaning of the Virginia statute, and that it was so acquired and used seems to us not doubtful. The goods consigned to the Wilkin Company were shipped and waybilled the same as to a purchaser; they were placed in its warehouses alongside goods obtained from other sources and exposed for sale in like manner; and from the stock on hand from time to time sales were made to customers procured by the Wilkin Company, presumably at prices and on terms fixed by it, as well as sales for a service charge to the parties named in the contract with petitioner. In short, in their legal aspect, the facts of record are practically identical with those considered by us in Virginia Book Co. v. Sites, 254 Fed. 46, 165 C. C. A. 456, and the views expressed therein, and in the authorities there cited, are decisive of this case. "To hold otherwise," as we then said, "would be to defeat in large degree the declared purpose of the statute and open the door to its easy evasion."

Affirmed.