GARMON *v.* FITZGERALD.

(Division A. Jan. 1, 1934.)

[151 So. 726. No. 30209.]

Roberson & Cook, of Clarksdale, for appellant.

534

Maynard, Fitzgerald & Venable, of Clarksdale, for appellee.

Argued orally by **W. W. Venable**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

This is a unique and unusual action of replevin instituted in the circuit court of Coahoma county by W. H. Fitzgerald, Jr., as trustee, against John W. Garmon, for the possession of certain personal property. The facts necessary to state are these:

J. A. Martin undertook to organize and procure the incorporation of the Martin Pure Milk Company, having a place of business at Clarksdale. He bought and sold milk and cream. This company purchased various machines and implements used in the business, and at the time of the inception of the transaction here involved Martin and the Martin Pure Milk Company were insolvent. He owed ten or twelve thousand dollars in secured debts, and as much in unsecured debts. The company owed money to the Planters' National Bank of Clarksdale, which was secured by a trust deed in favor of said bank on all the appliances and fixtures used in that business and enumerated in the deed of trust. There was a clause therein by which the parties contracted that any future or other indebtedness between the milk company and the bank was thereby secured. The milk company also owed the National Cash Register Company, which had retained the title to, or a mortgage on, the property sold by it; the same was true as to Bessire & Co., Remington Rand Business Service, Reed & Duecker, Inc. and De Laval Separator Company.

On or about April 4, 1928, Martin executed notes and a deed of trust in favor of Mrs. Cora B. Martin, his stepmother, for one thousand seven hundred dollars, and Mrs. E. B. Miller, his mother-in-law, for one thousand one hundred fifty dollars, but the deed of trust and the notes were not acknowledged until September, and up to the time of the trial remained in the possession of the debtor Martin. At this time the milk company owed the Planters' National Bank, as evidenced by two deeds of trust then in existence and uncanceled, about nine hundred dollars. The milk company owed Garmon about two thousand dollars. Martin was in distress financially, he could not borrow money, and the several lien creditors were threatening foreclosure. There was about ten thousand dollars due to secured creditors; at that time Garmon was an unsecured creditor. In this situation

Garmon and Martin entered into an arrangement by which Garmon was to use his good offices in aiding Martin to secure a further loan of two thousand dollars from the bank for a short time. This money was to be paid by Martin to Garmon; default was to be made in the payment of the note to the bank; Martin was to allow the bank to foreclose; and Garmon was to buy the property at the foreclosure sale. It was further agreed between Garmon and Martin that the former *would pay and discharge the indebtedness owed to the named secured creditors, including Mrs. Martin and Mrs. Miller.* Thereafter Martin was to run the milk business for Garmon on a salary; they were to share in profits and losses; and, in case the property was sold, Garmon was to be reimbursed. Subsequently the money was borrowed from the bank, default was made in the payment of the two thousand dollars to the bank, and at the sale Garmon became the purchaser for the amount of the bank's debt, which was about three thousand five hundred dollars at that time, and in the bill of sale executed by the trustee Garmon assumed the five or six thousand dollar secured debts of the milk company, but this instrument did not include the Martin and Miller indebtedness. After the sale, Garmon went into possession of all the personal property here involved, and Martin continued to manage the business for Garmon for about a year, then he became dissatisfied and left the employment. Thereafter this replevin suit was instituted.

Garmon paid all the secured creditors, except Mrs. Martin and Mrs. Miller. This indebtedness he declined to pay, and he categorically denied all the statements of Martin as to the agreement alleged by the latter to have been made in the inception of this transaction.

We deem it unnecessary to set out in full the deed of trust executed by Martin to Mrs. Martin and Mrs. Miller, the validity of which is challenged, because it is alleged by appellant that the description of the property therein

is insufficient, that the trust deed is void, and that parol evidence was incompetent to supply the description. The property is described in this manner: "Two Underwood Typewriters; three chairs; 1 steel filing cabinet . . .; five gross half pint bottles." There then occurs this sentence: "We also convey and warrant to Harry S. Moore, Trustee, the following property in Coahoma County, Mississippi, *after acknowledging a mortgage given to the Planters National Bank of Clarksdale, Miss.* (italics ours), to wit: one National Cash Register," etc. The same sentence occurs with reference to the other secured claims. Scores of articles are thus described.

We are of opinion that the contention of appellant must be upheld—that the replevin suit must fail because the description of the property is absolutely void, and nothing therein contained permitted the plaintiff in replevin to offer parol proof as to a better description and location of the property; the only description being that it was located in Coahoma county, Mississippi. There was nothing in the description which would separate and distinguish this property from any other of like kind—this is absolutely necessary. See Leffel v. Miller (Miss.), 7 So. 324; Allen v. Dicken, 63 Miss. 91; Nicholson v. Karpe, 58 Miss. 34; Pearce v. Perkins, 70 Miss. 276, 12 So. 205; Kelly v. Reid, 57 Miss. 89; Bowers v. Andrews, 52 Miss. 596.

Counsel for appellee insist that oral evidence was competent, because of the language quoted, wherein the parties acknowledged that there was a prior outstanding trust deed in favor of the Planters' National Bank of Clarksdale. Appellee insists that the language quoted, supra, is sufficient to point to an instrument in which a description of the property may be found. The difficulty with that contention is that there is no adequate description of the instrument acknowledged to be in existence; the instrument is not made a part of the contract here under review, nor is it referred to for a more adequate

description of the property; and the difficulty of appellee's situation is apparent when it appears in this record that there are in existence three deeds of trust in favor of this particular bank. We are therefore of the opinion that the case of McManus v. Wilson, 138 Miss. 1, 102 So. 543, cannot be brought to bear on the case at bar. The description in the deed of trust does not point an inquiry which, if pursued, will locate with certainty the true property and the description thereof.

Appellee insists, however, that, because of the alleged fraudulent agreement between Martin and Garmon, the appellant, the defendant in replevin was estopped to deny his title; the jury having found that this agreement was fraudulent and having rendered a verdict for the full amount of Mrs. Martin's and Mrs. Miller's claims as their interest in the property involved. The trouble with this contention is that the agreement simply establishes at the most that Garmon agreed to pay the milk company's debt to Mrs. Martin and Mrs. Miller, and this agreement gave Mrs. Martin and Mrs. Miller the right to bring an action at law in assumpsit for the debt—only this and nothing more. That is what this court has held in Barnes v. Jones, 111 Miss. 337, 71 So. 573; Canada v. Y. & M. V. R. R. Co., 101 Miss. 274, 57 So. 913; Hanson v. Davis, 132 Miss. 81, 95 So. 787; Yazoo & M. V. R. R. Co. v. Sideboard, 161 Miss. 4, 133 So. 669; Hickory Inv. Co. v. Wright Lumber Co., 152 Miss. 825, 119 So. 308. Mrs. Martin and Mrs. Miller, through their trustee, had no right, as we have determined, to proceed under the deed of trust wherein the description was void for uncertainty. Before this agreement was made, they were simply unsecured creditors. The deed of trust was unenforceable against Martin, and nothing occurred to make it enforceable as against Garmon. The change in the situation by the alleged fraudulent agreement improved the position of Mrs. Martin and Mrs. Miller. They had only an unsecured claim against Martin and the Martin Pure Milk

Company; they had the same against Garmon, but the property which the Martin Pure Milk Company owned had been so cleared of secured debts as to make collection of their debt more certain, or for an increased amount, if the estate then remained insolvent. "Estoppel operates only in favor of one who, induced by the acts or repre-'sentations of another, so changes his situation that injury would result if the truth were known." Hart v. Livermore Foundry & Machine Co., 72 Miss. 809, 17 So. 769. The element of estoppel does not enter into this case. The arrangement entered into by Martin and Garmon, denounced as fraudulent by the appellee, did not in the slightest degree change Mrs. Martin's and Mrs. Miller's position to their injury. There is no estoppel here.

The action of replevin is ex delicto and not ex contractu. See Quarles v. Hucherson, 139 Miss. 356, 104 So. 148. The plaintiff therein has the burden of showing his right to the immediate possession of the identical property described in the affidavit and declaration. Bell v. Smith, 155 Miss. 227, 124 So. 331; Johnson v. Sanders, 148 Miss. 472, 114 So. 334; Brunson v. Volunteer Carriage Co., 93 Miss. 793, 47 So. 377.

The truth is that, had the appellee decided to proceed by attachment for the debt against Garmon, under the agreement it would seem, but we do not so decide, that the position of Mrs. Martin and Mrs. Miller would have been less subject to successful attack.

There are other very serious questions in this case which are not necessary for us to consider at this time, as the one point here decided entirely disposes of the case. The peremptory instruction asked by appellant should have been granted. The judgment of the court below sustaining the replevin suit of the appellee is reversed, and a judgment entered here for appellant.

Reversed, and judgment for appellant.